THE STATE, DEFENDANT IN ERROR, v. CHARLES D. MANDEVILLE, PLAINTIFF IN ERROR.

Submitted March 27, 1916—Decided June 19, 1916.

Section 119 of the Crimes act makes it a criminal offence for any person, who maliciously or without lawful justification with intent to cause or procure the miscarriage of a woman pregnant with child, "shall advise her to take or swallow any poison, drug, medicine or noxious thing." *Held*, that the collocation of the four prohibited agencies being disjunctive, an indictment is sufficient which charges the administering of a "drug" alone, without any allegation of the administering of any of the other three prohibited agencies, to wit, "poison, medicine or noxious thing."

On error to the Supreme Court, whose opinion is reported in 88 *N. J. L.* 418.

For the plaintiff in error, *Frank E. Bradner*.

For the defendant in error, *Frederick F. Guild* and *Wilbur A. Mott*.

The opinion of the court was delivered by

GARRISON, J. The plaintiff in error was convicted under section 119 of the Crimes act (2 *Comp. Stat., p.* 1784), originally passed March 1st, 1849 (*p.* 266), which reads as follows:

"Any person who maliciously or without lawful justification, with intent to cause or procure the miscarriage of a woman then pregnant with child, shall administer to her, prescribe for her, or advise or direct her to take or swallow any poison, drug or medicine or noxious thing; or who maliciously or without lawful justification, shall use any instrument or means whatever, with the like intent, shall be guilty of a high misdemeanor, and punished accordingly; and if the woman or child die in consequence thereof, be punished by fine not exceeding $5,000 or imprisonment at hard labor not exceeding fifteen years, or both."

We concur in the reasons given in the opinion of the Supreme Court sustaining this conviction, excepting as to the reason therein given for holding that the indictment charged a criminal offence notwithstanding that it did not allege that the drugs advised or directed to be taken were noxious. The language of the opinion of the court below upon this point is as follows:

"The indictment contains two counts. The averment of the first is that the defendant, 'with intent to cause and procure the miscarriage of one Goldie Smith, then pregnant with child, did direct the said Goldie Smith to take divers drugs, to wit, ergotine, cotton root extract, oil and extract of savin, contained in divers pills known as emmenogogue pills.' The averment of the second count is like that of the first, except that it charges the defendant with advising the woman to take the specified drugs. The contention in support of the motion to quash was that the indictment does not charge a criminal offence in either count, because it nowhere alleges that the drugs directed or advised to be taken were any of them, either separately or when mingled together, noxious in character. If the indictment had charged the defendant

with directing or advising the woman to take a drug, the identity of which was unknown to the grand jury, but had failed to aver that the drug was noxious in character, the contention of counsel for the defendant would have been entirely sound; for unless the drug was noxious there was no violation of the statute. *State* v. *Gedicke,* 43 *N. J. L.* 86. And in the absence of such an averment the law will not presume that the drug directed or advised to be taken was of the character struck at by the statute. But where the indictment specifies the particular drug or combination of drugs advised to be taken, the absence or presence of an averment that it or they are of a noxious nature is entirely immaterial. If such be the fact the averment is unnecessary; if the fact be otherwise the averment will be unavailing."

Without reference to the soundness of the reasoning of the court below upon the basis assumed by it, we take a different view of the scope of the statute and think that its language requires that a broader meaning and effect be given to it than that ascribed to it by Mr. Justice Scudder in *State* v. *Gedicke,* 43 *N. J. L.* 86. The pertinent words of the statute are "shall advise or direct her (a pregnant woman) to take or swallow any poison, drug, medicine or noxious thing."

By the disjunctive collocation of these four prohibited agencies the statute has, upon familiar principles of construction, laid the foundation of four distinct criminal offences, any one of which, if properly pleaded in the indictment, constitutes a distinct crime. *State* v. *Brand,* 77 *N. J. L.* 486; *State* v. *Drake,* 30 *Id.* 422, which was upon this very statute.

The present indictment is based upon the prohibited agent "drug" alone, and hence need contain no allegation as to the other three agencies, to wit, "poison, medicine or noxious thing." It is therefore perfectly clear that the indictment charges a criminal offence as to the drugs that were advised or directed to be taken, and that the mention of any of the three other agencies would be entirely superfluous unless the pleader intended to charge an offence committed in connection with such other agencies.

This plain rule of criminal pleading is thrown into some confusion by the view expressed *obiter* by Mr. Justice Scudder in State *v.* Gedicke, viz., that "the collocation of the words in this statute requires that the thing used to effect the miscarriage should be noxious—that is, hurtful." The ground of this error of construction—and it was an error—is made apparent by the next sentence of the opinion which restates the language that was being dealt with as "The poison, drug, medicine or *other* thing must be noxious," thereby inserting the word "other," which would justify the construction put forth without giving any consideration to the circumstance that such controlling word was conspicuously absent from the statute. The omission of the word "other" from the statute was conspicuous because the English statute of 9 *Geo. IV., c.* 31, § 13, used these words, "any poison or *other* noxious thing," and it was upon this language that the English cases were based, which were made prominent by the opinion delivered in *State* v. *Cooper,* 22 *N. J. L.* 52, in consequence of which, so a footnote informs us, the act of March 1st, 1849, was enacted.

Under these circumstances the omission of the word "other" from our statute, which was in a measure founded upon the English statute which contained that word, renders such omission a deliberate act of legislation. Even without this history the established canons of construction compel us to treat the words of the statute as they were enacted and forbid us by judicial legislation to read into the statute a word that narrows its scope and gives a totally different meaning to its provisions. This is, of course, doubly the case when the word we are thus asked to read into the act has been deliberately left out of it by the legislature in framing its enactment.

Apart from this error of construction the view expressed in the opinion in State *v.* Gedicke to the effect that the design of the statute was to guard the health and life of the pregnant female, while true as far as it goes, ignores the salutary effect of the statute as a preventive of a crime against

public morals and the welfare of the state, which is equally within its language and purview. I am aware that the narrower view receives some support from an expression in the opinion in *State* v. *Murphy,* 27 *N. J. L.* 112, where the question now under consideration was not before the court. There is nothing, however, in either opinion that should prevent us, in a case where the question is squarely presented, from giving to the language of the statute all of the force that such language possesses as a deterrent not only of personal injury to a class of citizens of the state, but also of public injuries to the entire body politic. Such latter offence is clearly within the language of the act, and would be equally injurious to public morals and welfare if the means employed were entirely innocuous to the pregnant female or even if they were positively beneficial to her well-being. That the framers of our statute had this in mind is fairly indicated by the gradations adopted by the statute in its enumeration of the prohibited agencies which passed from "poisons," which clearly would be harmful to the female, to "drugs," which might not be so, and then to "medicines," which presumably were not so, leaving those things denominated as "noxious" to have sole reference to the female as in the English statute.

Every consideration therefore, legal or ethical, leads to this as the proper construction of the statute on which the present indictment was based.

That the contrary view suggested in State *v.* Gedicke was *obiter* clearly appears from a reading of the opinion in that case. The question propounded by the writer of the opinion, and in connection with which the views we have criticised were expressed, was whether it was error for the trial court to charge that the medicine, drug or noxious thing advised to be taken should be capable of producing a miscarriage. The opinion properly held that this was not error, but there was nothing in the decision of this question that called for the narrow construction placed upon the statute or that called

for the expression of opinion in which, for the reasons given, we find ourselves unable to concur.

It is not necessary, therefore, to overrule the decision in the case cited, but only to point out that the question we are deciding was not decided by that case.

The validity of the present indictment is sustained, therefore, directly upon the language of the statute and not upon the reasoning of the Supreme Court. This conclusion also affects the reason given in the court below for sustaining the proof by the state that the administration of the drugs named in the indictment would tend to produce a miscarriage.

If this testimony had been objected to its admission would have been harmless for the reason that under the statute and under this indictment the conviction could be sustained if the drugs did not tend to produce miscarriage and whether they were noxious or not. The testimony was not, however, objected to and the only judicial action challenged is the refusal of the court to grant a motion to strike out this testimony after the state had rested its case. The denial of this motion rested in the discretion of the trial court, which in the present instance was not abused.

With the foregoing modifications the judgment of the Supreme Court is affirmed for the reasons stated in the opinion of the court.

*For affirmance*—THE CHANCELLOR, GARRISON, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 13.

*For reversal*—None.